THE MORRIS CANAL AND BANKING COMPANY ADS. JOHN SEWARD.

1. A verdict will not be set aside, as against the weight of evidence, where the witnesses on one side satisfactorily prove that a dam has not been raised, and those on the other, prove that the water in it is higher, when the raising of the water, which the verdict finds can be accounted for by other alterations in the dam besides it being raised.

2. If a company, under the power granted to take land, by assessing and paying the value of it, survey, assess, and pay for a definite quantity to be overflowed by works to be erected by them, and afterwards the works erected by them cause a larger quantity than that assessed and paid for is overflowed by their works, the land owner is entitled to an action for the same, even if he fails satisfactorily to prove any raising of the dam.

This was an action on the case, brought by Seward against the Morris Canal and Banking Company, for a nuisance in overflowing his lands, by raising the waters of lake Hopatcong, which they had selected and used as a reservoir for waters to supply their canal. When the company erected their dam at the lake, by which the waters were raised, their engineer had made a description of the lands of the plaintiff, which the lake would overflow, as raised by the dam of the company : the value of these lands was assessed according to their charter, and paid for by the company. The plaintiff contended that the dam of the company caused the lake to overflow and injure other lands adjoining those assessed and paid for, and on this founded his action.

The cause was tried before Justice OGDEN, at the Morris circuit, in a very protracted trial. A great many witnesses were sworn and examined on both sides, as to the questions

of fact, whether the dam had been altered or raised, and whether more land of the plaintiff was overflowed than the amount assessed and paid. A verdict was given for the plaintiff for one hundred dollars damages..

A rule was granted to show cause why a new trial should not be granted.

The rule to show cause was argued before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*J. W. Miller* and *Whelpley*, for the rule; *F. T. Frelinghuysen*, against it.

NEVIUS, J., delivered the opinion of the court.

This suit is brought to recover against the defendants for an alleged injury to the plaintiff's lands lying on the margin of lake Hopatcong, in the county of Morris, by means of the defendants' dam, or other works, at the outlet of said lake. It was tried at the August circuit for said county, and a verdict rendered for the plaintiff of $100 damages. By the 11th section of the act incorporating the defendants, it was made lawful for them to raise the waters of lake Hopatcong, by damming the same for the purposes of their canal, on payment of all loss and damages to the owners of lands flooded, or otherwise used, in obtaining water for said canal, agreeably to other provisions in said charter. By the 6th section, it is provided, that in case the company cannot agree with the owner upon the value of the land required, then that it shall be lawful for the company to cause a survey and map to be made of such lands, in the field book of which map and survey shall be distinguished the lands of each owner appropriated or intended to be appropriated by them, and the quantity thereof, accompanied by the oath of an engineer, that the premises therein described are required by the company for the purposes of their incorporation; which, being exhibited to a justice of the Supreme Court, it was made his duty to cause the same to be filed in the clerk's office of the county, and thereupon to appoint three discreet and disinterested freeholders to make a just and equitable estimate of said lands and

damages to such owner, to be paid by said company; and on the payment of the same, the estate, right, and property in said lands, so appropriated, described, and appraised, shall immediately be vested in said company.

In the construction of their canal, or in the completion of it, the defendants deemed it necessary to raise the water in Hopatcong lake, by means of a dam at the outlet thereof, and, as a necessary consequence, to overflow with the waters of the lake some of the adjacent lands, and, among others, a portion of the lands belonging to the plaintiff in this cause. As a preliminary to such appropriation, they caused their engineer to make out a survey and map of such of the plaintiff's lands as were intended to be appropriated, and had the value thereof, together with the damages, appraised, according to the above recited provisions of their charter, and paid the same to the plaintiff. This proceeding took place in the year 1831, at which time the defendants erected their dam, raising, or which was adapted to raise, the water of the lake some twenty inches above its former level.

The plaintiff now complains that since that time, and before the bringing this action, the waters of the lake have been raised higher than in 1831, and have overflowed and submerged, and thereby permanently appropriated to the use of the defendants, other of his lands, and which were not included in the map or survey made by the engineer in 1831, and upon which the proceedings of the commissioners and their appraisement were founded. And he attributes this rise in the water to an increased height of the dam, or other contrivances made by the defendants, since such appraisement made in that year. The defendants deny that they have increased the height of their dam since the appraisement, or that they have, by any act or contrivance of their own or their agents, caused the waters of the lake to overflow more of the plaintiff's lands than were embraced in the map before referred to, or to damage more than were covered by the assessments.

This is the material and all important issue made between these parties. Upon the trial of this case, and after the evidence had closed, the learned judge charged the jury, " that if they

should not find, from the evidence, that the Morris Canal and Banking Company, by themselves or their agents, have raised the dam for holding water higher than it was when the assessment and appraisement were made, or that they unlawfully altered the same, so as to cause it to make more pondage, and, by means of such illegal raising or alterations, that they have injured the lands of the plaintiff, then that the damages now claimed by the plaintiff have been paid by the assessment. That the proceedings of the commissioners had in 1831 are conclusive upon the parties, and in law bar the plaintiff's alleged right of recovery, and that in such event their verdict should be for the defendants."

Under this charge, the jury rendered a verdict for the plaintiff for $100, whereby they declared that they did find, from the evidence, either that the defendants had raised their dam, or had unlawfully altered it, so as to cause it to make more pondage since the assessment in 1831, and that thereby the plaintiff's land was injured.

The defendants contend that this verdict, if not against the evidence in the cause, is against the weight of evidence,· and for that reason ask a new trial. As no objections are made to the ruling of the court upon the trial, and as no difficulty arises ,upon any legal question involved in the case, we are called upon to examine a voluminous map and evidence to settle the only question before us, to wit, whether the verdict is sustained by the evidence. From this examination, it appears that a few important facts were clearly established on the trial.

1. As to the erection and description of the dam, which is the alleged source of the protracted controversy, Mr. Mason, the engineer in the employ of the Morris Canal and Banking Company, a gentleman whose character for intelligence and integrity is unquestioned by the parties, gives the following account of it: that previous to the incorporation of this company, there was an old dam at the outlet of the lake, called the Randolph dam. That, in the year 1826, the company built another dam, about 100 feet distant from the Randolph dam, and above it. In 1829, '30, and '31, they erected still another

dam above the dam of 1826, and higher than the latter by 1.61 feet, with one set of gates in it. The object of this dam was to increase the head of water in the lake, for the purposes of the canal. When this latter dam was in progress of construction, to wit, in January or February, 1831, this engineer made a survey of the lands around the margin of the lake, from an assumed high water mark, with the view of ascertaining what additional quantity of land would be permanently overflowed by means of said dam when the lake was full; and, having delineated the same on a map, he made the affidavit required by law, and commissioners were thereupon appointed, who estimated the value of the additional lands to be overflowed and appropriated by the company, and the damages to the respective owners, among whom was the plaintiff, and who at that time received payment from the company. In 1834, a lock was built in this upper dam, and additional gates put in at the head of the lock, but, as Mr. Mason testifies, on a level with, and no higher than the lower gates. He further testifies, that he was in the employ of the company from 1825 to 1837, except during the years 1832 and 1833, and, to the best of his knowledge and belief, the dam was never raised after 1831, so as to increase the head of water; and in this he is sustained by a number of witnesses, whose connection with the company gave them an opportunity of knowing whether or not such a raising has been made. Another fact, connected with this dam, was proved upon the trial, and may be of importance in the determination of the question before us, and that is, that the first, or lower dam was, in 1840, raised some two feet or upwards; but all the witnesses testified that this was done only for the purpose of sustaining the upper, or last dam, and not for the purpose of increasing the head of water in the lake, and that the water was not in fact raised by this increased height of the lower dam.

On the other, or plaintiff's, side it was proved, with equal clearness by several witnesses, that after the year 1831, and after the assessment to the plaintiff, more of his land was overflowed by the water of the lake than was embraced in the map and survey upon which the estimate and appraisement were

made by the commissioners. It is unnecessary to advert particularly to the witnesses whose testimony tended to the establishment of this fact. I will barely refer to the evidence of Mr. Mason, who says that the land upon each side of a certain road was included in his map, but not the road itself; which road was most clearly shown to have been submerged by the water of the lake, after 1831, some eighteen or twenty inches.

Here, then, was presented an apparent inconsistency in the evidence which the jury were called upon to decide. There was but one outlet for the waters of the lake, and that was at the defendants' dams. These dams are proved to have been completed in 1831, and not to have been raised or altered after that time so as to raise the water of the lake, and no other cause can be assigned for such increase in the level of the lake; and yet it was proved that there was such an increase as to flow the water on other of the plaintiff's lands not included in the company's map. It was the duty of the jury to reconcile this apparent discrepancy, if possible, and how was it to be done.

It was urged, by the plaintiff, that the engineer who made the survey and map of the lands to be appropriated by overflow was not positive as to the point assumed by him as the high water mark from which he took his level, and, of consequence, it was not established (beyond a doubt) that the level was taken from the top of the dam; and as the object of the defendants was to raise a head of water in the lake to supply their canal, they, from abundant caution, have made their dam higher than, in their opinion, was necessary to gain the required head; and that the lake, not having been filled to the height of the dam, until 1836, it was then first discovered that the dam itself would backwater so as to overflow more land than was comprised in the survey. And it was further contended, on the plaintiff's part, that even admitting that a level corresponding with the top of the dam of 1831 had been assumed by the engineer as high water mark in his survey, yet it was proved that after the year 1831 dirt had been put upon the dam for purposes of repair, and, by that means, the height

of the dam may have been essentially increased, though not by design; and the counsel refer us to the remark made by the engineer in his testimony, " that in repairs the upper dam may have been somewhat raised, though he don't know it." Again, it is further urged by the plaintiff, that the construction of the lock in the upper dam, in the year 1834, and the increased height of the lower dam, in 1840, by the defendants, may have had a tendency to increase the head of water in the lake, and, of consequence, the overflow of an additional quantity of land, although witnesses swear that this could not be so.

To these arguments of the plaintiff's counsel it is answered— that there is no clear evidence that the dam was raised after 1831, and that, by consequence, the water in the lake could not have been raised, or if it was, that it must have been the result of specially wet seasons or other causes not produced by the acts of the defendants; that the construction of the lock in 1834, as it did not increase the height of the gates or the dam, could not have produced that result; that the increase of the height of the lower dam in 1840 did not raise the water in the lake, and, therefore, the plaintiff has no claim for damages against them, the value of his lands submerged and appropriated by them, and his consequential damages, having been assessed and paid to him in 1831.

These were questions that were fairly left to the jury by the judge who tried the cause, and, by their verdict, they have declared, either that, in their opinion from the evidence before them, the defendants have raised their dam higher than it was in 1831, or that they have so altered it as to cause an increased flowage of the waters of the lake, or that the survey and map of the engineer made in that year, and upon which the assessment was founded, did not contain all the land which the dam did overflow when the waters were raised to its highest level. And upon such finding the verdict ought to have been, as it was, for the plaintiff. There was no misdirection of the judge on the trial, no misconduct of the jury charged. They are admitted to have been men of intelligence and integrity; some, if not all, had had a view of the premises, and I can

find in the case nothing to impeach the correctness of their verdict.

One other argument of the defendant's counsel calls for the notice of the court, and it is this, that when the survey and map, made by the engineer, of such of the plaintiff's lands as were required by the company to be overflowed, were laid before the commissioners, as the basis of their valuation and assessment, it was not only the right, but the duty of the plaintiff to except to them, if they were incorrect. Not having done so, the same is conclusive upon him, notwithstanding more of his land is overflowed than is contained in the survey. This argument is not sound. The land owner was under no legal obligation to controvert the correctness of that survey at that time; and had he been disposed to do so, how could he have verified his objections? He could not know, except from the company itself, or its agents, how high they designed to raise the water of the lake, and how much of his land they intended to appropriate to their use. Their charter authorized them to appropriate what, in their opinion, was necessary, but required them to designate and specify on a map what they designed to appropriate, and to verify that map by the oath of their agent. The land owner, even if he had been disposed to do so, could not fix their level of water; or, if it was fixed and clearly ascertained, was he bound to employ an engineer to make a survey and test the accuracy of the map made by the company. He was not bound to give up his title to any other lands than the company claimed for the purposes of their charter, and that claim was shown by their own survey. If they took more land afterwards to correct their own mistake, (if any were made) they are bound in law and justice to pay for it. The argument of defendant is not sustained.

If the jury, therefore, were justified by the law and evidence to render a verdict for the plaintiff, and I think they were, that verdict ought to stand, because it is not, nor is it pretended to be, extravagant and exorbitant.

I think the rule ought to be discharged, with cost.

The CHIEF JUSTICE and OGDEN, J., concurred.